UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-10138-KMM

GABRIEL GARCIA-SOLAR.,

 Petitioner,

v.

UNITED STATES OF AMERICA,

 Respondent.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before the Court upon Movant Gabriel Garcia-Solar's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct a Sentence. ECF No. 1. The government filed a Response, ECF No. 4, to which the Movant further filed a Reply, ECF No. 6. The Motion was referred to the undersigned United States Magistrate Judge for an evidentiary hearing, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable K. Michael Moore, United States District Judge. ECF No. 7. A hearing was held on October 12, 2021, on Movant's first claim for ineffective assistance of counsel, which alleges that counsel failed to communicate with him about the possibility of a plea agreement. Having reviewed the Motion, Response, Reply, with the benefit of an evidentiary hearing, and being otherwise duly apprised in the matter, the undersigned finds that the allegations are not supported by evidence adduced at the hearing and accordingly **RECOMMENDS** that Movant's Motion be **DENIED**.

 **I.** **BACKGROUND**

  **a. Factual and Procedural History**

On November 17, 2016, a grand jury charged Movant and several co-defendants with: (1) conspiracy to possess with intent to distribute five (5) kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States (Count 1); and (2) possession with intent to

1

distribute five (5) kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States (Count 2). CRDE No. 33.[1]

Assistant United States Attorney ("AUSA") Jodi Anton joined the case in May 2017, prior to trial, and as she states in the government's Response to the Order to Show Cause, she recalls discussing a plea offer with Assistant Federal Public Defender ("AFPD") Stuart Abrams, Movant's trial attorney. ECF No. 4 at 9. Anton proffers that she specifically recalls such a plea offer because she only joined the case following the Court's denial of a motion to continue trial filed by then-AUSA Scott Behnke. *Id*. at 8 (citing CRDE 102-104). Anton states that her late addition to the case coupled with the looming trial date meant a significant amount of work needed to be accomplished, and thus "discussions were had" with Abrams regarding a potential plea to the mandatory minimum. *Id*. at 9. Anton states that when he was contacted, Behnke believed that he offered such a plea deal to the Defendants, but neither accepted because both counts carried mandatory minimum sentences of ten years. *Id*.

The case went to trial, and on July 15, 2017, a jury found Movant guilty of both counts. CRDE No. 215. The Court sentenced Movant to 300 months' imprisonment on Counts 1 and 2, to run concurrently. *Id*. at 37. This sentence was within the guideline sentencing range of 292 to 365 months' imprisonment. *Id*. at 22. On September 27, 2017, the Court entered judgment. CRDE No. 268. Movant appealed. CRDE No. 274. On May 22, 2019, the Eleventh Circuit issued an opinion affirming his conviction and sentence. CRDE No. 356 at 3, 31. On March 25, 2020, the United States Supreme Court denied review. CRDE No. 368.

Movant thereafter brought the instant Motion, averring in relevant part here that he is entitled to post-conviction relief on the basis that Abrams ineffectively failed to attempt to negotiate a plea

---

[1] References to the underlying criminal case, *United States v. Garcia-Solar et al*., 4:16-cr-10042-KMM-1, are notated as "CRDE No. __".

2

with the government.[2]  ECF No. 1 at 4.  Movant claims that not only did Abrams fail to communicate any plea offer, but that Movant did not know the possibility of entering a guilty plea existed all, only learning about the concept following his conviction and incarceration.  ECF No. 6 at 2.  According to Movant, Abrams was "insistent that [Movant] go to trial with his codefendants because there 'was no evidence' against him."  *Id*.  The government concedes that there "does not appear to be any indication in the record that counsel discussed a possible plea with movant" and that "this is a factual dispute which needs to be resolved at an evidentiary hearing with the testimony of movant, AFPD Abrams and former AUSA Behnke."  ECF No. 4 at 9-10.

The Court agreed, and in its Order referring the matter to the undersigned for an evidentiary hearing, found that Movant "allege[d] facts that, if true, would entitle him to relief."  ECF No. 7 at 9 (quoting *Hernandez v. United States*, 778 F.3d 1230, 1232 (11th Cir. 2015) (citation and internal quotation marks omitted)).  Counsel John Wiley was appointed to represent Movant for the purpose of the evidentiary hearing.  ECF No. 9.  Following a series of continuances due in large part to the COVID-19 pandemic, the Court conducted an evidentiary hearing on October 12, 2021.

### b. Hearing Testimony

Movant testified via video teleconference that if he had been offered a deal to plea to a five-year sentence, he would have accepted the offer.  Movant also testified that Abrams visited him eight or nine times but said only two or three words at each visit, no more, and primarily relied on an investigator to interpret their meetings.  Movant denied that anyone ever advised him of the maximum or minimum terms of imprisonment possible under the statute, claiming that not even a magistrate judge so advised him in court.  Movant testified that he was dissatisfied with Abrams' performance

---

[2] Movant additionally argued that Abrams ineffectively failed to properly object to a 2-level sentence enhancement imposed; the Court found on this point that Movant did not overcome to the presumption that Abrams' conduct fell within the wide range of reasonable professional assistance and that he was entitled to neither relief nor an evidentiary hearing on this ground.  ECF No. 7 at 6-7.

as his attorney and wanted to have him removed in advance of trial, claiming that his discontent arose because Abrams was "not making progress"; Movant said he did not see any benefit to himself in Abrams' representation and, as the attorney, Abrams should have found a logical way to resolve the case. Movant also testified that he wanted to fire Abrams because Abrams did not bring him a plea offer, though Movant further explained that he did not learn what a plea offer was until he was designated at and moved to FCI Coleman to serve his sentence. Movant testified that someone helped him by writing his § 2255 Petition, though he did not tell that person—who speaks no Spanish—that he in fact wanted to plead guilty to the charges. Indeed, during his testimony at the evidentiary hearing, Movant stated that he could not be identified from the video that the government relied on at trial; he challenged the examining prosecutor to show him on the boat with the drugs, then stating he would plead guilty.

AFPD Stewart Abrams appeared and testified via video teleconference that he recalled representing Movant, who insisted throughout the case that he was innocent of any charges and was arrested on a vessel he embarked on to help search for missing fishermen at sea. Abrams, who twice traveled to Mexico during the pendency of the criminal matter to locate, interview, and depose witnesses Movant claimed would exonerate him, testified that while he did not have a specific recollection of meetings in which he explained the minimum and maximum penalties or the strength of the evidence against Defendant, it has been his practice over the course of his career with the AFPD (where he has worked since March 1984) to explain the United States legal system to his clients, having a particular sensitivity to doing so for foreign nationals who do not understand the United States justice system or why they are being charged in the United States at all. Abrams did recall that the evidence against Movant was strong in this case, and while he did not specifically recall receiving a written plea offer from the government, Abrams stated that anything conveyed to him that would have resolved the case—particularly considering the strength of the evidence—he would have

conveyed to Movant.

Abrams testified that it is his practice with every client to go through the evidence, statements, and other necessary information with his clients so that they can decide whether to go to trial or enter a guilty plea. In testifying that he was certain he followed the same practice in Movant's case, Abrams explained that this has been his practice his entire career, without exception. While Abrams acknowledged that he did not have written evidence memorializing the communication of a plea offer, Abrams explained that this was not unusual, as his practice was to explain plea offers in person, and when taking notes in such client meetings, his focus was to write down information that would help him properly prepare the case for trial or alternative disposition. Abrams testified that his notes reflected that almost every conversation he had with Movant involved Movant adhering to his innocence. Nevertheless, Abrams was both adamant and confident that he would have discussed the difference between a plea versus a trial and conveyed any plea offer to Movant given the type of case and the strength of the evidence.

Abrams testified that Movant never raised with him the issue of any frustration with Abrams' representation; Abrams stated that to the extent he saw Movant exhibit frustration, it was related to being in prison in the United States for simply being engaged in what Movant informed him was a rescue mission and not a drug smuggling conspiracy.

II.     **LEGAL STANDARD**

Pursuant to 28 U.S.C. § 2255, a prisoner in federal custody may move the court that imposed sentence to vacate, set aside or correct the sentence if it was imposed in violation of federal constitutional or statutory law, was imposed without proper jurisdiction, is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id*. To obtain

this relief on collateral review, however, a habeas petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982) (rejecting the plain error standard as not sufficiently deferential to a final judgment).

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his Defense." U.S. Const. amend. VI. To prevail on a habeas corpus petition based on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 669 (1984). Courts review counsel's performance in a highly deferential manner under a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. For the second prong "*Strickland* places the burden on the defendant to show a 'reasonable probability' that the result would have been different." *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (quoting *Strickland*, 466 U.S. at 694).

A court deciding an ineffective counsel claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. *Strickland*, 466 U.S. at 690. A convicted defendant making such a claim must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Id*. To determine whether counsel's performance was deficient, the court must, with much deference, consider whether counsel's assistance was reasonable considering all the circumstances. *Id*. at 688. Moreover, the court must avoid the "distorting effects of hindsight" and assess the reasonableness of counsel's performance from his perspective at the time of the challenged conduct. *Id*. at 689. In this regard, "strategic choices" made by counsel after thoroughly investigating the relevant law and facts are "virtually unchallengeable." *Id*. at 690. "Where the record is incomplete or unclear about counsel's actions," the court "will presume that he did what he should have done, and that he exercised

reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (2000) (internal quotation marks and alterations omitted).

Regarding the prejudice requirement, the Supreme Court observed that an unreasonable error by counsel does not justify setting aside a criminal judgment when the "error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Thus, absent special circumstances, the defendant must affirmatively prove prejudice resulting from his counsel's deficient performance. *Id*. 692-93. The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Establishing *Strickland*'s deficient-performance and prejudice elements "is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between.'" *Van Poyck v. Fla. Dep't of Corr.*, 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (quoting *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc)). If a petitioner makes an insufficient showing on either element, the court need not address the other element. *See Strickland*, 466 U.S. at 697.

In *Missouri v. Frye*, 566 U.S. 134 (2012), "the Court specifically held that counsel has a 'duty to communicate formal offers from the prosecution to accept a plea,' and that, in general, where such an offer is not communicated to the defendant, counsel '[does] not render the effective assistance the Constitution requires.'" *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012) (quoting *Frye*, 566 U.S. at 145). The duty to communicate formal plea offers includes a "critical obligation . . . to advise the client of the advantages and disadvantages of a plea agreement." *Padilla v. Kentucky*, 559 U.S. 356, 370 (2010). Furthermore, the failure to "broach the possibility of a plea agreement" may, in certain circumstances, constitute deficient performance. *See Carmichael v. United States*, 966 F.3d 1250, 1256, 1258 (11th Cir. 2020).

"Where a petitioner raises an ineffective assistance claim asserting that his counsel was deficient in plea discussions, to demonstrate prejudice he must show that, but for the ineffective assistance of counsel, a reasonable probability existed that: (1) the plea offer would have been presented to the court (i.e. the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) under the offer's terms, the conviction or sentence, or both, would have been less severe than under the judgment and sentence that were, in fact, imposed." *Id.* at 1259 (citations omitted).

### III. ANALYSIS

#### a. Deficiency

Movant's success or failure as to the deficiency prong depends on his ability to advance credible evidence that his trial counsel provided him with deficient representation. Here, Movant offered his own testimony in support of the claim that Abrams failed to communicate the potential for a plea agreement, which the Court does not find credible.

As a threshold matter, Movant's testimony severely undermines the reliability of his allegations in the Petition given that he neither prepared the pleadings nor did he have any meaningful substantive communication with the individual who did. Movant testified that his pleadings in this case were drafted by another incarcerated individual who assists with "legal paperwork." This individual, however, speaks solely English and Movant speaks solely Spanish, and Movant testified that the individual prepared the Motion exclusively by reviewing the legal paperwork presented by Movant. Movant did not explain the facts of his case to this individual or articulate any concern that Abrams failed to communicate a plea offer. When pressed further about how the filings were substantively prepared, Movant repeatedly testified that in filing the Motion, he was looking for "an opportunity" to obtain an offer that would allow him to end his imprisonment sooner and return to his family, adding that he was innocent of the crimes for which he was convicted.

Movant offered additional testimony at hearing that further weakened his credibility. For example, Movant testified that Abrams' initial meeting with Movant at the jail was approximately ten minutes and that no meeting thereafter lasted more than a few minutes; however, he admitted that Abrams played the videos produced in discovery, and the length of those videos precludes them from having been viewed in a few minutes' time. Movant further testified that at no point did anyone ever explain the minimum and maximum terms of imprisonment he faced, the strength of the evidence against him, or the likelihood that he would lose at trial; Movant stated that had Abrams explained these facts to him, he would have wanted to plead guilty to the charges. This testimony is directly contradicted by Movant's insistence even during the course of the evidentiary hearing that he was innocent of the crimes for which he was convicted.

Abrams, by contrast, credibly testified as to his routine practice during the course of a career with the AFPD that spans approximately 38 years, explaining that in every case he explains the trial process, the weight of the evidence that the government plans to advance at trial, and the defendant's options regarding whether to exercise his right to trial or enter a plea instead. Abrams testified that he was certain that, as he has in each and every case in his career, he would have communicated to Movant any plea offer made. Additionally, Abrams' testimony as to the specific efforts made in this case (for example, repeated trips to attempt to locate and depose exonerating witnesses along with repeated visits made to Movant in custody) is incongruous with the unsupported factual allegations levied by Movant that would paint Abrams as dilatory.

Accordingly, Movant has not carried his burden to establish that Abrams' representation was deficient for failing to communicate a plea offer to him.

  b. **Whether Movant was Prejudiced**

The government contends even a finding that Abrams failed to communicate a plea offer to Movant will not entitle him to relief, arguing that it is unclear from the existing record whether the

Court would have imposed a lesser sentence upon a guilty plea, observing that Movant's existing sentence was eight months more than the low end of the advisory guideline range.[3] ECF No. 4 at 12. Indeed, even though a counsel who fails to communicate a formal offer from the prosecution to accept a plea has provided ineffective assistance under the Sixth Amendment, to prevail, a movant must nevertheless demonstrate *both* that there is a reasonable probability the plea would have resulted in a lower sentence and, as articulated by the Court in *Frye*, that the movant would have accepted the plea offer if it had been made. *In re Perez*, 682 F.3d at 932 (citing *Frye*, 566 U.S. at 146).

On the evidence presented, I find that Movant has not carried his burden to demonstrate that but for counsel's alleged failure, he would have received a reduced sentence.

First, Movant has not shown by any degree of probability that he would have accepted an offer to plead guilty in exchange for the government's recommendation that he only receive the mandatory minimum sentence. Movant relies on his bare assertion that he would have accepted a plea offer to a mandatory minimum term of imprisonment, testifying at various points that he would have accepted a plea offer of five years—though no party offered evidence or testimony that any such offer was made—or ten years. But such "self-serving statement after the fact that he desired to plead guilty, without more, is insufficient to establish that he would have accepted a plea offer but for his counsel's [alleged failure to communicate the plea offer]." *Wilson v. Inch*, No. 19-61879-CIV, 2021 WL 536132, at *10 (S.D. Fla. Jan. 26, 2021), *report and recommendation adopted*, No. 19-CV-61879, 2021 WL 535376 (S.D. Fla. Feb. 13, 2021) (citations omitted); *see also Diaz*, 930 F.2d 832, 835 (11th Cir. 1991) (finding that the district court could have concluded that appellant "did not establish a reasonably probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement").

---

[3] While the Court sentenced Movant to 300 months imprisonment, the low end of the advisory guideline range was 292 months.

Movant's claim that he would have pled guilty is undercut here too by Movant's testimony at the hearing maintaining his innocence of the crimes charged, which corroborates Abrams' testimony that Movant was steadfast in every conversation had with Abrams that he was innocent and thus would not have been able to get through the plea colloquy admitting his participation in the crimes charged. Indeed, the testimony supports the *opposite* conclusion—that Movant insisted on a trial. "The best way to evaluate whether there is a reasonable probability a petitioner would have insisted on going to trial is to determine whether petitioner had available a defense that would likely have borne fruit at trial." *Wilson*, 2021 WL 536132, at *11 (quoting *Singleton v. Sec'y of Dept. Of Corr.*, 2009 WL 975783, *4 (M.D. Fla. 2009) (internal quotations omitted)). In *Wilson*, the court found that the petitioner's "abiding belief" in his own innocence contradicted the idea that he would nevertheless have accepted a plea offer and conceded guilt but for his counsel's alleged errors. *Id*. Movant's adherence to his own innocence here sits in direct tension with his claim that he would have accepted a plea.

Nor did Movant have meaningful evidence in support of his defense. Abrams testified that during one of his trips to Mexico to locate evidence that would corroborate Movant's account that he departed on the subject vessel for the sole purpose of rescuing a lost fisherman from his hometown, Abrams spoke with the leader of the fishing company, a man who would definitively know whether any individuals were lost at sea. The man told Abrams that no fishermen had been lost at sea and that he was unaware of any rescue mission.

As a second basis on which the Court finds that Movant has not shown that he was prejudiced by Abrams' alleged failure to communicate the plea agreement, Movant offers no evidence to support the claim that he would have received a lesser sentence if he *had* taken the plea agreement. At sentencing, Abrams advocated on Movant's behalf for a downward variance to the ten-year mandatory minimum despite the advisory guideline range of 292-365 months' imprisonment. In

11

rejecting this argument and imposing sentences of just eight months above the low end of the guideline range, Judge Moore remarked on the fact that Movant did not elect to accept responsibility for his crimes and noted that the guideline range was established by Congress and the Sentencing Commission as appropriate for the quantity of drugs Movant was carrying on board the vessel—a quantity worth millions of dollars.  During the evidentiary hearing, Movant's counsel argued that Abrams could have helped Movant enter an "*Alford* plea"—a reference to pleas made pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970)—in which Movant would have entered a guilty plea while maintaining his innocence.  The applicable two-point downward variance, however, is specifically for acceptance of responsibility, which Movant would not have done via an *Alford* plea.[4]

Accordingly, Movant has not demonstrated that he was prejudiced by Abrams' alleged failure to discuss with Movant the plea offer made by the government, and the Court may deny Movant's Motion on this ground of the *Strickland* test as well.

## IV.   CONCLUSION

For the foregoing reasons, I find that counsel was not deficient as alleged and alternatively, that Movant has failed to evidence his prejudice resulting from the alleged deficiency. Accordingly, I recommend that the Petition be **DENIED** as to Movant's first claim for relief.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir.

---

[4] This assumes too that the hypothetical *Alford* plea would have been accepted by the Court; as Abrams testified, in his career as an attorney, he has had but one accepted *Alford* plea.

R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida, October 25th, 2021.

LAUREN F. LOUIS
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record